IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ABE GUPTA,

    Plaintiff,

v.

LAURETTE BEESON, et al.,

    Defendants.

No. C 05-00506 CRB

**MEMORANDUM AND ORDER**

    Plaintiff contends that defendants discriminated against him on account of his race/ethnicity (Indian) during a disciplinary proceeding arising from accusations that plaintiff cheated in a Stanford University computer science class. Now pending before the Court is defendants' motion for summary judgment and plaintiff's cross motion for summary judgment. After carefully considering the pleadings and evidence submitted by the parties, and having given the parties the opportunity to argue orally, the Court GRANTS defendants' motion and DENIES plaintiff's cross-motion.

### BACKGROUND

    Plaintiff was an undergraduate at Stanford University. Stanford has an Honor Code that applies to all students. The Code provides, among other things, that students will neither give nor receive assistance with class work unless permitted by the instructor.

During the winter quarter of his freshman year at Stanford, plaintiff enrolled in Computer Science 106A. As part of his course work, he was required to complete programming assignments named Yahtzee, Eudorette and AfterDark. Toward the end of the quarter, plaintiff's Computer Science instructor, Erik Chen, notified the Stanford Office of Judicial Affairs of approximately six cases involving sixteen students who had potentially violated the Stanford Honor Code. One of the cases involved plaintiff and a white student ("student A"), based on similarities in their Yahtzee and Eudorette assignments. A second case involved plaintiff, an Asian student ("student B"), and an Hispanic student based on similarities in their AfterDark assignments.

Nancy Morrison was the Judicial Officer and Assistant Dean of Students at Stanford at the time of Chen's complaint. As the Judicial Officer she was responsible for investigating instructor Chen's charges of Honor Code violations and deciding if formal charges should be made against a student. According to Morrison, of the 16 students named by Chen (who is Asian), eight are Asian (and four of those have Indian surnames); six are Caucasian; one is Hispanic; and one is Middle Eastern.

Chen provided Morrison with the results of a MOSS ("Measure of Software Similarity) analysis of the assignments. MOSS is a system for determining copying in computer programming assignments. The MOSS analysis showed a high degree of similarity between plaintiff's and student A's Yahtzee and Eudorette submissions, and a similarly high degree of similarity between plaintiff's and student B's AfterDark submissions. Chen subsequently advised Morrison that plaintiff's and the Hispanic student's AfterDark submissions were not sufficiently similar to warrant Honor Code charges.

Morrison met personally with plaintiff on March 23, 2001. Plaintiff stated that his assignments were available on Stanford's computer network without password protection and that he was concerned that student A and student B may have accessed his work from the network without his knowledge.

Morrison met again with plaintiff on April 4, 2001. At this meeting plaintiff initially stated that he wrote his code himself and that someone must have seen his code. He later

2

stated in the meeting that he and student A had worked together on the Yahtzee and Eudorette assignments, and that the code had been copied between plaintiff and student A. He also advised that he had been "stuck" on the AfterDark assignment, and that student B had showed plaintiff the student's code and plaintiff had copied the code from a hard copy of student B's code.

In an email two days later plaintiff again explained that he had become "stuck" on the AfterDark assignment. He approached student B and "asked him how he had completed his function. In order to help me, he showed me a paper copy of his ReleaseStream function."

Morrison met with plaintiff and student A together on April 16, 2001. During the meeting plaintiff repeatedly asked student A to admit that the two of them had worked together on the Yahtzee and Eudorette assignments. Student A repeatedly and consistently denied working with plaintiff. Student A presented Morrison with an analysis that showed that the "style" in which he wrote code was consistent throughout all his assignments in the course, whereas, except for the Yahtzee and Eudorette assignments, plaintiff's work did not include such "style."

On April 24, 2001, Morrison met with plaintiff and his parents. Plaintiff stated that he believed the Honor Code policy was unclear as to whether students could work together on code.

Student B denied showing plaintiff any part of his AfterDark assignment, including the ReleaseStream function. His denial was corroborated by Stanford computer security records that demonstrated that student B had not yet printed a copy of his assignment at the time plaintiff claimed student B showed him a hard copy. Student B also explained his thought process for approaching the assignment, and identified similarities between plaintiff's and the student's work product that went beyond the ReleaseStream function that plaintiff had admitted reviewing.

As a result of her investigation, Morrison charged plaintiff with Honor Code violations for copying student A on the Eudorette and Yahtzee assignments and student B on the AfterDark assignment. She based her decision on plaintiff's changing and inconsistent

3

statements, his admission that he collaborated on assignments, the consistent and unequivocal denials of student A and student B, the information she received from all parties, the instructor, and Stanford computer security, as well as the fact that plaintiff was implicated in multiple incidents.

Morrison made the decision *not* to charge student A on April 17, 2001, two months before charging plaintiff and one day after meeting together with plaintiff and student A. She decided *not* to charge student B on August 1, 2001. Of the 16 students Chen had initially referred to Morrison, Morrison charged six and decided not to charge 10. Of the six charged, two are Caucasian and four are Asian (two, including plaintiff, with Indian surnames). The 10 students not charged include two Asians with Indian surnames.

Plaintiff's case was subsequently heard by the Judicial Panel on November 27, 2001. The Panel consisted of one law school faculty member, one staff member and four students. The Panel unanimously found that plaintiff had copied student A and the student B and suspended plaintiff for one quarter and ordered 80 hours of community service.

Plaintiff appealed the decision to the Stanford Final Appeals Panel. The Final Appeals Panel heard plaintiff's appeal on February 27, 2002. The Panel denied the appeal.

## PROCEDURAL HISTORY

Plaintiff originally brought a civil complaint for damages against Stanford and two of its employees in state court. Plaintiff challenged his discipline on the ground that there were defects in the disciplinary hearing process. The state courts dismissed plaintiff's complaint with prejudice because plaintiff had failed to seek administrative mandamus. Gupta v. Stanford University, 124 Cal.App.4th 407 (2004).

Plaintiff, proceeding pro se, responded by filing this lawsuit. While plaintiff is pro se, at the time the Court is hearing these motions he is a law school graduate who has externed for the California Supreme Court. After two motions to dismiss, what remains is plaintiff's claim pursuant 42 U.S.C. section 1981(b) that during the disciplinary proceeding defendants discriminated against plaintiff on account of his race/national origin. He does not challenge

4

the outcome of those hearings; rather, he contends that he was treated in a racially discriminatory manner during the process.

The Court directed defendants to file their summary judgment motion by December 2, 2005 and scheduled the hearing for February 3, 2006. The Court scheduled the hearing for two months after defendants filed their summary judgment motion to give plaintiff the opportunity to request additional discovery after plaintiff had reviewed defendants' motion. At plaintiff's request, the Court twice continued the motion and the deadline for plaintiff's opposition to give him even more time to conduct discovery to defeat defendants' motion. As the final deadline for plaintiff's opposition approached, plaintiff moved for an order shortening time to file a motion for summary judgment. As plaintiff is moving for summary judgment on the same claim as defendants–the only claim still at issue in this lawsuit–the Court granted plaintiff's motion.

## SUMMARY JUDGMENT STANDARD

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial (here, defendants) has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). Where the party moving for summary judgment would bear the burden of proof at trial (here, plaintiff), he has the initial burden of producing evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. C.A.R. Transp. Brokerage Co., Inc. v. Darden, 213 F.3d 474, 480 (9th Cir. 2000).

If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. If, on the other hand, the moving party has satisfied its initial burden of production, then the non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead

1 must produce admissible evidence that shows there is a genuine issue of material fact for
2 trial. Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that
3 could reasonably be resolved in favor of either party. A dispute is "material" only if it could
4 affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477
5 U.S. 242, 248-49 (1986).

**DISCUSSION**

**A.  Legal Standard**

Plaintiff contends that defendants charged him with cheating because of his national origin/race. The parties agree that the legal framework for evaluating plaintiff's claim is that established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). This familiar test is usually applied in the employment context and requires a plaintiff to first establish a prima facie case of intentional discrimination by showing: (1) he belongs to a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) some other circumstance indicates a discriminatory motive, such as similarly situated individuals being treated more favorably. See Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998). The test, however, should be adapted to the facts of each case. See Ruggles v. Cal. Polytechnic State Univ., 797 F.2d 782, 785 (9th Cir. 1986).

To meet his prima facie burden plaintiff must show: (1) he belongs to a protected class, (2) he suffered some adverse action, and (3) some other circumstance indicates a discriminatory motive, such as similarly situated individuals being treated more favorably. Defendants argue that plaintiff must also show that there was insufficient evidence to charge him with cheating. The Court is not so certain. As defendants and plaintiff acknowledge, plaintiff cannot challenge the Judicial Panel's finding that he copied student A and student B. See Defendants' Appendix of Exhibits, Exh. Q (Plaintiff's Opposition to Defendants' Motion To Dismiss stating that he does not challenge the Judicial Panel's decision). As the Court has previously ruled, such a contention is barred by res judicata as plaintiff filed--and lost--a state court lawsuit challenging the finding and his suspension. The claim here is different: he contends that both he and student A did what defendants claim constituted

6

cheating, yet defendants charged him and not student A with cheating because of plaintiff's race/national origin. Accordingly, for the purposes of the parties' motions for summary judgment, the Court will not require plaintiff to prove the evidence was insufficient to charge him with cheating.

When and if plaintiff establishes a prima facie case of discrimination, the burden shifts to defendants to articulate a legitimate nondiscriminatory reason for the adverse action. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000). If defendants meet this burden of production, then the burden-shifting framework disappears, and the only remaining issue is "discrimination vel non." Id. at 143. Although the burden of production shifts, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. (internal quotation marks and citation omitted). "And, in attempting to satisfy this burden, the plaintiff–once the [defendant] produces sufficient evidence to support a nondiscriminatory explanation for its decision–must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. (citation omitted).

### B.   Non-decisionmakers

As a preliminary matter, summary judgment must be granted in favor of individual defendants Beeson, Nyberg and Weiss. There is no evidence that any of these defendants were involved in the decision to charge plaintiff with cheating. The sole issue is whether Morrison (and thus Stanford) intentionally discriminated against plaintiff.

### C.   Prima Facie Showing

It is undisputed that plaintiff is a member of a protected class and that he suffered some adverse action, namely being charged with and suspended for cheating. The dispositive issue is whether he has submitted evidence sufficient to show that the reason he was charged was discriminatory, that is, because of his race/national origin. "The requisite degree of proof necessary to establish a prima facie case [of discrimination] on summary

7

Case 3:05-cv-00506-CRB   Document 140   Filed 06/09/06   Page 8 of 14

1  judgment is minimal and does not even rise to the level of a preponderance of the evidence."
2  Aragon v. Republic Silver State Disposal, 292 F.3d 654, 659 (9th Cir. 2002).

3      Plaintiff has not satisfied even this minimal showing. He first attempts to show
4  discrimination by arguing that he and student A were similarly situated. To raise an
5  inference of discrimination, the allegedly similarly situated person "must be similarly situated
6  in all material respects–not in *all* respects." McGuinness v. Lincoln Hall, 263 F.3d 49, 53
7  (2d Cir. 2001). "The ultimate question that is informed by the similarly situated analysis is
8  whether there is a basis for inferring discriminatory motive: Does the purported purpose of
9  the challenged action require similar treatment of the two employees or does it justify
10  different treatment due to differences in their status or situation rather than race [or
11  ethnicity]." Bowden v. Potter, 308 F.Supp.2d 1108, 1117 (N.D. Cal. 2004).

12      Plaintiff and student A shared several similarities. Both were freshmen in the same
13  computer science course with the same assignments and they lived next to each other in the
14  Stanford residence halls. Plaintiff's instructor initially prepared an analysis for the Stanford
15  Office of Judicial Affairs that described six potential Honor Code violations involving 16
16  students. Next to plaintiff's and student A's names, as well as the names of three other
17  students, the instructor typed the word "definite;" for the other names he typed "potential" or
18  "questionable." Chen's analysis did not determine if the students had worked together or if
19  one had copied the other without the other's knowledge. If Morrison had decided to charge
20  plaintiff and not student A based solely on this information, plaintiff would have satisfied his
21  prima facie burden because he and student A would have been similarly situated in all
22  material respects. See McGuinness, 263 F.3d at 53.

23      The decision to charge plaintiff, however, was not made at that time; instead, it was
24  made after Morrison conducted an investigation. After that investigation plaintiff and
25  student A were not similarly situated in material respects.

26      First, plaintiff, unlike student A, gave inconsistent explanations for the similarities
27  between his work and student A's work. Plaintiff initially told Morrison that he had created
28  his own code and that the other students must have copied his work; he even explained that

8

his work was available on the Stanford network without password protection. He later contradicted his earlier statement by explaining that he and student A had worked together on two assignments and that, with student B's permission, he had reviewed a hard copy of some code on which student B had been working. Student A and student B, in contrast, each consistently denied working with plaintiff and never changed their stories.

<u>Second</u>, plaintiff's story was contradicted by documentary evidence. Stanford computer security records demonstrated that plaintiff's claim that he had reviewed a hard copy of a portion of student B's code was false. Student B further contradicted plaintiff's story by identifying other similarities between plaintiff's work and student B's work which are not explained by plaintiff's story. Student A also provided Morrison with an analysis which showed that his work on the "copied" assignments was consistent with his style on all his other assignments in which there was no allegation of copying. Plaintiff's other work, in contrast, did not contain these unique characteristics.

<u>Third</u>, Morrison was provided with Stanford computer security records that indicate plaintiff had attempted to access the computer home folders of student A, student B, as well as other students in the Computer Science 106A class.

<u>Fourth</u>, plaintiff was implicated in three assignments involving two different students (student A with two assignments, student B with a different assignment) whereas student A (and student B) were only implicated with plaintiff. This evidence suggested that plaintiff was the person responsible for the copying.

In short, the evidence that plaintiff had cheated was much stronger than the evidence as to student A; indeed, the evidence suggested that plaintiff had copied student A's work without his permission, but there was no evidence that the converse had occurred, that is, that student A copied plaintiff without plaintiff's permission. Moreover, Morrison (upon Chen's recommendation) also eventually declined to charge student B with cheating. The evidence with respect to this student was similar: it suggested that plaintiff copied student B without his permission but not the converse. In such circumstances, no reasonable jury could find that student A was similarly situated to plaintiff. See <u>Coward v. Cambridge School</u>

9

1  Committee, 171 F.3d 12, 21 (1st Cir. 1999) ("No valid comparison can be drawn between
2  two incidents for the purpose of proving disparate treatment if differentiating or mitigating
3  circumstances distinguish the [student's] conduct or the [school's] response").

4      Plaintiff unsuccessfully attempts to dispute *some* of the above differences.  He claims
5  that he did not make the statements Morrison attests he made.  As evidence he cites
6  paragraph 4 of his affidavit.  Plaintiff's Opposition at p. 8-9.  Paragraph 4 merely states:
7  "The White student [student A] and I worked together to complete assignments in CS 106A.
8  At the time we collaborated, neither of us felt that such collaboration was in violation of any
9  university policy including the honor code."  This testimony does not contradict Morrison's
10 affidavit; indeed, it is silent as to what plaintiff told Morrison.  Moreover, plaintiff's
11 testimony as to what student A "felt" is inadmissible.

12      He also contends that student A made similarly inconsistent statements.  His evidence
13 that student A made such statements, however, consists solely of student A's deposition
14 testimony that he told Morrison he had discussed the computer programming assignment
15 with other students in the class.  Plaintiff's Motion for Summary Judgment at 15.  Such
16 testimony does not contradict Morrison's testimony that student A consistently denied
17 collaborating with plaintiff even when plaintiff, in front of Morrison, implored student A to
18 admit to such collaboration.   In sum, there is no admissible evidence that student A made
19 inconsistent statements or statements similar to plaintiff's.

20      Plaintiff also emphasizes that Morrison's June 29, 2001 letter charging him with
21 Honor Code violations admits the possibility that student A (and student B) may have
22 collaborated with plaintiff and thus violated the Honor Code themselves.  Such statement,
23 however, is not evidence that the evidence against student A (and student B) was as strong
24 and compelling as the evidence against plaintiff.  That Morrison had already finally decided
25 not to charge student A (and so notified him) before June 29 also does not give rise to an
26 inference of discrimination.  Again, the evidence against student A was slim at best
27 compared to the evidence implicating plaintiff. Moreover, Morrison testified that the
28

10

language used in the letter was "standard" and that in the letter she did not want to preclude any defense that plaintiff might raise.

Plaintiff makes no attempt to dispute the evidence that contradicts his story as to why he and student B's AfterDark assignments were so similar.  For example, he does not offer any evidence that disputes the evidence that Stanford computer security records show that student B could not have printed out and provided plaintiff with a hard copy as plaintiff had explained.  Nor does he respond to the point that his story about reviewing a hard copy of the student's "ReleaseStream" function does not explain the other similarities in their code.

Plaintiff also does not produce any evidence to dispute Morrison's testimony that student A provided Morrison with an analysis that showed that the specific stylistic characteristics for how student A wrote code were consistent for each of his assignments in the course and not consistent for plaintiff's assignments, except for the two assignments the Judicial Panel found plaintiff had copied.  Plaintiff contends that instructor Chen did not perform such an analysis, but that contention does not dispute Morrison's testimony that student A showed her such an analysis;  indeed, her testimony is corroborated by an email attached to plaintiff's motion.  Plaintiff's Exh. P to Motion for Summary Judgment.  Again, Morrison was not faced with such damning evidence against student A; instead, Student A consistently denied working with plaintiff and maintained that plaintiff must have copied him, an allegation that was supported by the evidence presented to Morrison.

Finally, plaintiff also does not dispute that Morrison had evidence that plaintiff had attempted to open the computer files of student A, student B, as well as other students in his computer science class.

Next, plaintiff contends that even if the decision to charge him was not discriminatory, Morrison's investigation itself was discriminatory.  He asserts that Morrison sought out a statement from student A's computer science teaching assistant, but did not similarly seek such a statement for plaintiff until after he was formally charged.  As plaintiff's evidence demonstrates, however, student A provided Morrison with the statement from his teaching assistant on his own; there is no evidence that Morrison asked for the statement.  There is

11

also no evidence that Morrison prevented plaintiff from providing her with such evidence should he have taken the initiative to do so. Moreover, prior to plaintiff's hearing, Morrison did obtain a statement from plaintiff's teaching assistant. Notwithstanding the statement, the Judicial Panel found that plaintiff had copied students A and B.

Plaintiff also complains that Morrison obtained student A's final score for the class, but not plaintiff's score (which, according to the record, was a not passing grade). Again, there is no evidence that Morrison sought out student A's final grade; moreover, there is no evidence she considered the grade in deciding not to charge him with cheating.

Plaintiff's other arguments are similarly meritless and do not require discussion. His claim that discriminatory intent is evidenced by Morrison's use of her nickname "Nanc" on *one* of her emails to student A and on none of the emails to plaintiff is typical of these other arguments.

## C.  Burden shifting and pretext

Even assuming plaintiff had satisfied his minimal prima facie burden, defendants have produced evidence that provides a legitimate, nondiscriminatory reason for charging plaintiff with cheating, as is explained above. See Bodett v. CoxCom, Inc., 366 F.3d 736, 744 (9th Cir. 2004) (in deciding whether a defendant has met its burden of production under McDonnell Douglas, the court must take its evidence supporting its reason for the adverse action as true).

As defendants have met their burden of production, any presumption of evidence that arises from the prima facie showing disappears. The question is: on the record before the Court, could a reasonable jury find that plaintiff's race/national origin likely motivated defendants' decision to charge plaintiff with cheating. The answer is "no." There is no evidence that plaintiff's race/national origin played any role whatsoever; rather, plaintiff was charged because Morrison believed the evidence supported a finding that plaintiff had copied student A and student B. The Judicial Panel agreed. In other words, no reasonable jury could find that Morrison did not honestly believe that plaintiff had copied student A and student B. See Bodett, 366 F.3d at 744.

12

United States District Court
For the Northern District of California

This conclusion is supported by the undisputed evidence that defendants did not charge student B, who was Asian, with cheating, and that of the six students in plaintiff's computer class she did charge with cheating, two are Caucasian. Moreover, two of the students Morrison decided not to charge are Asian with Indian surnames.

Plaintiff contends that at a meeting before Morrison charged plaintiff, Morrison handed plaintiff a document prepared by an employee of student A's father's company and stated that plaintiff "should take special note that the document was written by 'someone Indian.'" Plaintiff's Decl. at ¶ 15. Morrison denies that she made the statement, but for summary judgment purposes the Court must accept plaintiff's sworn testimony. Nonetheless, this evidence does not save plaintiff's claim. While the statement suggests that Morrison was aware of plaintiff's ethnicity, it does not suggest that she charged him with cheating because of his race/ethnicity, especially in light of the evidence discussed above.

Plaintiff's contention that defendant Beeson made a reference to his being Indian is also unavailing. Again, the statement is disputed, but the Court must accept plaintiff's sworn testimony as true. The statement, however, was made more than eight months *after* Morrison charged plaintiff with cheating and it was made by a person who was not involved in the decision to charge plaintiff. The statement is thus insufficient to support a finding that plaintiff's race/ethnicity was likely a motivating factor in Morrison's decision to charge plaintiff.

//
//
//
//
//
//
//
//
//

13

**CONCLUSION**

On the record before the Court, viewing the evidence in the light most favorable to plaintiff, no reasonable jury could find that defendants more likely than not charged plaintiff with cheating because of his race/national origin. Nor could they find that defendants treated him a certain way during their investigation because of his race/national origin. Accordingly, defendants' motion for summary judgment is GRANTED and plaintiff's cross-motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: June 9, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE